# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **FLEET LEASE EXCHANGE CO., INC.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ITNEO, INC.,** | § | **Case No.  1:21-CV-665-LY** |
| *Defendant* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
   **UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction, filed August 6, 2021 (Dkt. 3), and Defendant's Answer in Opposition to Plaintiff's Motion, filed August 16, 2021 (Dkt. 8).[1] On August 11, 2021, the District Court referred the motion, along with any response, reply, or matter relating to any request for a TRO or preliminary injunction, to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). Dkt 5.

## I.    Background

Plaintiff Fleet Lease Exchange Co., Inc. is an Ohio company that specializes in assisting owners of automobiles to sell, finance, or transfer their automobiles to third parties. Defendant ITNEO, Inc. is a Texas business management company that provides software, services, and technical support to its customers.

---

[1] Pursuant to Local Rule CV-7(e)(2), the Court need not wait for a reply before ruling on the motion.

### A.  Plaintiff's Allegations

Plaintiff alleges that in September 2006, the parties entered into "the first of a series of annual agreements" ("Agreements") in which Defendant agreed to create for Plaintiff "certain custom software programs" ("Software") in exchange for bimonthly payments. Plaintiff's Original Complaint and Request for Injunctive Relief, Dkt. 1 ¶¶ 7, 11. Plaintiff contends that the parties have renewed these Agreements every year for the past fifteen years, executing their most recent Agreement in September 2020. *Id.* ¶ 20. The current Agreement expires August 31, 2021. *Id.*

Plaintiff has attached the 2019 and 2020 Agreements to its Complaint. Dkt 1-1. Each states, in relevant part:

> The following is agreed to by Fleet Lease Exchange Company (Customer) and ITNEO. Customer commitment term is 12 months, beginning September 1, 2020, for 80 Standard Hours of work per week. . . . Rate for committed Standard Hours and any Standard Hours overages is $112.50. . . .
>
> Payment for committed hours is due one month in advance, split up into two payments, the fist on the 1st of the month, and the second on the 15th of the month. . . .
>
> The ITNEO Terms and Limited Warranty, attached hereto . . . are incorporated herein and made part of this Agreement.

*Id.* at 1, 5. The Terms and Limited Warranty provisions list various warranty limitations and exclusions. *Id.* at 2-4. Although the Agreements are silent as to ownership or licensing of the Software, Plainitff claims that "[t]he intent and conduct of the parties was for the Plainitff to be the owner of the Software." Dkt 1 ¶ 21.

Plaintiff alleges that it has paid Defendant approximately $5 million for the Software, related databases, and updates since 2006. Plaintiff alleges that the Software is critical to its business, "as it allows Plaintiff to monitor the inventory of vehicles of its customers, monitor third parties that

would want to acquire such vehicles, [and] facilitate the sale, finance, or transfer of the vehicles to the most desirable third parties." *Id.* ¶ 9.

Plaintiff further alleges that its sister company Funding Services Corp., d/b/a Tresl ("Tresl") also uses the Software and related databases. Dkt. 3 at 5. Plaintiff alleges that Defendant learned in March 2021 that Plaintiff was selling Tresl to a third party. Dkt. 1 ¶ 22. The transaction is set to close in mid-September. Dkt. 3 at 5. Plaintiff contends that:

> When Defendant learned that Plaintiff was in the process of selling its commonly owned and related sister company that uses the Software to a third party, Defendant, for the very first time, claimed that it actually owns the Software and that Plaintiff needs a license to continue to use the Software and Databases, such license costing Three Million One Hundred Thousand Dollars ($3,100,000).

*Id.* at 2. Plaintiff filed with its Complaint an April 23, 2021 email in which Defendant offered to license the Software to Plaintiff for $3.1 million, Dkt. 1-3, and a proposed written license agreement Defendant presented to Plaintiff on June 3, 2021, Dkt. 1-4. On June 23, 2021, Plaintiff informed Defendant that it would not renew any agreements with Defendant. Plaintiff alleges that Defendant removed Plaintiff's adminitrative access to the Software and databases on July 21, 2021.

Plaintiff filed suit on July 28, 2021, seeking a declaration under 28 U.S.C. § 2201(a) that "Plaintiff has an unlimited, non-exclusive license to retain, use, and modify the Software and all databases related to the Software." Dkt. 1 ¶ 39. Alternatively, Plaintiff seeks a permanent injunction preventing Defendant from denying Plaintiff access to the Software and databases. *Id.* ¶ 41. Plaintiff contends that if it loses access to the Software, it "will lose its current customers, and Plaintiff will be unable to offer its services to its customers or any future customers." *Id.* ¶ 31.

### B.  Defendant's Allegations

Defendant disputes Plaintiff's interpretation of the parties' business relationship and their rights and obligations under the Agreements. Defendant contends that it "has programmed and maintained a turn-key business management hardware and software-as-a-service platform (the 'Platform') that predates any relationship between the parties." Dkt. 8 ¶ 11. Defendant submitted evidence that it developed the Platform in or about 1999 and has actively developed and maintained it. Second Affidavit of Thomas Crum, Dkt. 8-2 ¶ 6.

Defendant contends that since 2006, "Plaintiff has licensed the Defendant's Platform, which it accesses via a user interface (the 'UI') that the Defendant programmed on their behalf." Dkt. 8 ¶ 12. Defendant further alleges that from 2006 through April 2021, it provided updates and support of the user interface through which Plaintiff accessed Defendant's Platform. Defendant avers that Plaintiff has only operational access to the Platform and never has had administrative or owner-level access to the Platform or authorized access to its source code. *See id.* ¶ 14; First Affidavit of Thomas Crum, Dkt. 8-1 ¶¶ 19-20; Second Affidavit of Brian Perkins, Dkt. 8-6 ¶ 12.

Because the parties' Agreement was due to expire on August 31, 2021, Defendant contends that Plaintiff initiated negotiations in April 2021 for a short-term license arrangement that would facilitate the migration of Plaintiff's data to an independent platform Plaintiff planned to develop. Defendant alleges that on July 15, 2021, Plaintiff requested and Defendant provided a new user account to Plaintiff as part of Plaintiff's data migration plan. Defendant contends that a few days later, Plaintiff tried to hack into Defendant's Platform in an attempt to copy Defendant's trade secrets. Defendant emphasizes that Plaintiff's counsel stated in an August 2, 2021 email that Plaintiff "will be copying, modifying, de-compiling, reverse engineering, and making a derivative work of certain parts of the system, as needed, to continue to use its data" on the new system. Dkt. 3-1 at 15.

Finally, Defendant asserts that "Plaintiff can easily access, migrate, and organize its data without obtaining access to the platform's source code." Dkt. 8 ¶ 3. Defendant represents that it has enabled an account through which Plaintiff can "easily retrieve, in an organized, structured format, all data from a table," so Plaintiff "does not need any additional privileges or access to easily migrate its data in an organized fashion." *Id.* ¶ 21.

## C. Plaintiff's Motion for TRO and Preliminary Injunction

In its Motion for TRO and Preliminary Injunction, Plaintiff asks the Court to order Defendant to (1) restore and maintain Plaintiff's full access to the Software its associated database systems, and (2) not do anything that will prevent Plaintiff from migrating its data to its new system. Dkt. 3 at 1. Defendant opposes the Motion.

On August 13, 2021, the Magistrate Court held a hearing on the Motion and heard oral argument from counsel. After considering the law and the parties' submissions and arguments, the Court makes the following recommendation.

## II.    Legal Standards

Federal Rule of Civil Procedure 65 governs requests for preliminary injunctions and TROs. Preliminary injunctions and TROs require parties either to do or to refrain from doing some act and are enforceable by contempt. 11A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 2941 (3d ed. 2021 Update). A TRO "typically is sought and issued on an ex parte basis and operates to prevent immediate irreparable injury until a hearing can be held to determine the need for a preliminary injunction." *Id.* In contrast, "a preliminary injunction is effective until a decision has been reached at a trial on the merits." *Id.* Because the Court has heard argument from both parties, Plaintiff is seeking a preliminary injunction under Rule 65(a).

A preliminary injunction is an "extraordinary and drastic remedy" and "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). Therefore, "[t]he decision to grant a

preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

To demonstrate entitlement to a preliminary injunction, a party must establish the following four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012). Because a preliminary injunction is an extraordinary form of equitable relief, the movant must clearly carry the burden of persuasion on all four requirements. *Id.* Failure of the movant to establish any one of the four elements will result in denial of the preliminary injunction. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020).

### III.    Analysis

In order to establish the first factor, a substantial likelihood of success on the merits, "the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). At the hearing, Plaintiff argued that it does not claim to own the Software. Rather, Plaintiff contends that it has shown a substantial likelihood of success on the merits by demonstrating that it "is entitled to an unlimited, non-exclusive license to retain, use, and modify the Software."

The Copyright Act requires most types of licenses to be evidenced by a writing. *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (citing 17 U.S.C. § 204(a)). An implied, nonexclusive license, however, need not be evidenced by a writing. *Id.* An implied, nonexclusive license may be shown where: "(1) a person (the licensee) requests the creation of a

work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* at 879. These factors are not exclusive, and the ultimate question is whether the "totality of the parties' conduct" illustrates an intent to grant a license. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012). The alleged licensee bears the burden of proving the existence of a license. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 n.5 (5th Cir. 2003). "[C]reation of an implied license, which turns on the copyright holder's intent, is a fact question." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017).

Key to this dispute is how the parties define the Software and the scope of the implied license Plaintiff seeks. While Plaintiff refers to the Software, as explained above, Defendant distinguishes between the user interface through which Plaintiff accesses the Platform and the Platform itself. Defendant agrees that Plaintiff owns its data and the portions of the user interface Software it developed specifically for Plaintiff. Dkt. 8 ¶ 35. Defendant also agrees that Plaintiff is entitled to full access to the user interface. *Id.* But Defendant strongly disputes that Plaintiff is entitled to a license to copy the Platform or access its source code.

Defendant denies that it ever intended to allow Plaintiff to copy its Platform or access its underlying source code. "Without intent, there can be no implied license." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). Plaintiff thus has failed to make a prima facie case that Defendant intended to allow Plaintiff to copy or distribute the Platform. *Lulirama*, 128 F.3d at 879.

Plaintiff relies on a case from the Ninth Circuit Court of Appeals, *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008), in support of its argument that it is entitled to an implied license. *Gagnon* is readily distinguishable, however, in that the software programs at issue in that case were created for the plaintiff. Here, Defendant has submitted evidence that the Platform was not

created for Plaintiff and Plaintiff never has had administrator access to it. The "totality of the parties' conduct" therefore does not demonstrate that Defendant intended to grant Plaintiff the unlimited license to the Software that it now seeks. *Baisden*, 693 F.3d at 501.

Accordingly, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits. Because it has not demonstrated a substantial likelihood of success on the merits, Plaintiff has not shown that it is entitled to the "extraordinary and drastic remedy" of a preliminary injunction. *See Future Proof Brands*, 982 F.3d at 289 ("A plaintiff must prove four factors to obtain a preliminary injunction. Because [Plaintiff] fails on the first factor—"a substantial likelihood of success on the merits"—we do not address the other three.") (citation omitted). Plaintiff's Motion for TRO and Preliminary Injunction should be denied.

## IV.    Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for TRO and Preliminary Injunction (Dkt. 3).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **SIGNED** on August 18, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE